**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

In re:                                                          Case No. 6:17-bk-02004-RAC

Ronald E. Scherer,                                             Chapter 11

                    Debtor.
_____/

**CREDITOR UNITED STATES' MOTION FOR ADDITIONAL TIME FOR RULE 2004**
**EXAMINATION OF DEBTOR**

       Creditor United States moves the Court for an order providing additional time for a Rule 2004 examination of Debtor.[1]  The United States began an examination of Debtor pursuant to Rule 2004, but Debtor objected to the continuation of the examination beyond seven (7) hours. For the reasons discussed below, the United States requests an additional seven (7) hours of time for a Rule 2004 examination of Debtor.

**FACTS**

       On November 3, 2017, the Creditor United States took a Rule 2004 examination of Debtor.  With a one hour lunch break and number of additional shorter breaks taken at the request of various parties, it lasted a full business day.  Debtor cooperated in answering the questions asked of him.  No significant disputes arose during the examination with respect to specific questions.

       The United States nevertheless was unable to complete its questioning of Debtor on November 3, 2017, because the amount of material to be covered simply could not be covered in one full business day.  At the time of the examination, counsel for Debtor and for the United

---

[1] Unless otherwise specified, all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

States were under the mistaken belief that a Rule 2004 examination is limited to seven (7) hours.

Near the end of the business day on which the examination was taken, trial counsel for the

United States asked Debtor and his counsel if they would agree to additional time for the

examination.  They refused.

## LAW

### No Time Limitation on a Rule 2004 Examination

Rule 30(d)(1) of the Federal Rules of Civil Procedure provides that "a deposition is

limited to one day of 7 hours."  Rule 7030 adopts Rule 30(d)(1) of the Federal Rules of Civil

Procedure, but only for purposes of adversary proceedings.  Because a Rule 2004 examination is

not treated as a contested matter (*see* Local Rule 2004-1), Rule 30(d)(1) of the Federal Rules of

Civil Procedure is not applicable to Rule 2004 examinations under Rule 9014(a) and (c).  A Rule

2004 examination is taken for purposes of the bankruptcy case, not an adversary proceeding or a

contested matter.  Rule 9014 pertains to motions, but a Rule 2004 examination is set by notice.

Local Rule 2004-1 does not specify a limitation on the amount of time during which a

party may conduct an examination.

### Scope of a Rule 2004 Examination

Rule 2004 provides broad authority for a creditor to take an examination of a debtor.

Under the rule, questioning in an examination may relate to the acts, conduct, property, or

liabilities and financial condition of the debtor, or to any matter which may affect the

administration of the debtor's estate, or to the debtor's right to a discharge.  In a Chapter 11 case,

questioning also may relate the operation of any business and the desirability of its continuance,

the source of any money or property acquired  or to be acquired by the debtor for purposes of

consummating a plan and the consideration given or offered therefor, and any other matter

relevant to the case or to the formulation of a plan.

The purpose of a Rule 2004 examination includes discovering assets and unearthing frauds. *In re Pan American Hosp. Corp.*, 2005 WL 2445907 *2 (S.D. Fla. Feb. 25, 2005).

The scope of a Rule 2004 examination is so broad that it may legitimately be in the nature of a fishing expedition. *Id.*

## ANALYSIS

No federal or local rule limits the length of a Rule 2004 examination.  The United States therefore should be permitted to take an additional day of examination of Debtor.  Debtor has no basis for filing any type of motion for a protective order.

In refusing to agree to continue the Rule 2004 examination, Debtor did not assert any disagreement with the nature or scope of the questions that were asked or that would be asked. Rather, he simply did not want the United States to have any more opportunity to question him about assets, liabilities, businesses he did or does own and operate, assets he transferred to trusts in which his adult children are beneficiaries or companies he controls, and transactions showing he has hidden or attempted to conceal assets with the assistance of family, friends, and long-time business associates.  That is not a legitimate reason to refuse additional examination.  Also, trial counsel for the United States questioned Debtor in a respectful manner, asking relevant questions on relevant topics.  At the examination, Debtor did not make any assertions to the contrary.

In addition to there being no federal or local rule that precludes the United States from taking more than 7 hours for an examination of Debtor, there are strong factual grounds for the Court to permit it.  Another day of examination is required because the United States needs to question Debtor about a chronologically lengthy fact pattern that involves many individuals, businesses, trusts, transactions, court cases, real properties, documents, and tracing of funds in

numerous bank documents, billing records, and other financial and trust documents.  Although

trial counsel for the United States came to the examination on November 3, 2017, carefully

prepared with a detailed outline for questioning and two boxes of organized documents (with

courtesy copies for Debtor's counsel), and he asked questions as efficiently as possible, only

about half of the material was covered by the end of the business day.  Debtor appeared to be

cooperating.  But some of the events took place many years ago.  As a result, it sometimes took

Debtor time to recall things or he had to be asked a number of questions to help him remember

an event.  There also are many documents.  Debtor often took time to read large portions of

lengthy document exhibits before answering questions.  The United States is not complaining

about the Debtor reading exhibits at the examination or the amount of time it took him to do so.

That is something that happens frequently at examinations and depositions.  But because of the

many documents involved in the instant examination, the age of the matters discussed in some of

them, and the need to ask Debtor about many details and items in some of the lengthy

documents, such as bank statements, an additional day is required to complete the examination.

The United States has a right to use Rule 2004 to examine Debtor about events, property,

liabilities, individuals, entities, trusts, transactions, and documents that may shed light on his

present right, title, and interest in assets, regardless of whether they are titled in his name,

beneficially owned by him, or were transferred into the name of any alter egos, nominees, and or

fraudulent transferees.  The fact pattern begins with Debtor's father, Roger L. Scherer,

establishing a trust in the early 1980s and his death shortly thereafter.  From that trust, three

separate trusts were created - - one for the benefit of Debtor, one for the benefit of Debtor's

sister, and one for the benefit of Debtor's mother and grandmother.  Debtor's father was wealthy.

The trusts contained a number of valuable businesses and assets, including, among others,

newspaper and magazine distributors, oil wells, and commercial real estate.  Debtor, his sister, and his children wrestled for control of the assets in Debtor's father's trusts with the trustee of the trusts.  The trustee contended, among other things, that Debtor misappropriated several million dollars of assets from his father's trust.  Debtor and his family contend that the trustee mishandled the administration of the Roger L. Scherer's trust.  The battle was the subject of litigation in the Franklin County, Ohio Probate Court and appellate courts for more than ten years.  *E.g. Scherer v. JP Morgan Chase & Company*, 508 Fed. Appx. 429 (6th Cir. 2012); *Scherer v. Wiles*, 659 Fed. Appx. 349 (6th Cir. 2016).  That litigation spawned other litigation, including actions that Debtor and his family filed against attorneys that represented them or the trusts in the probate court litigation and against the trustee of his father's trust.  *Id*.

The fact pattern also involves an IRS examination of Debtor that led to a petition he filed in the United States Tax Court in 2003.  Debtor entered into an agreed decision in the Tax Court in 2005, which holds that Debtor is liable for substantial income taxes for 1990 through 1992.  The United States obtained documents that indicate that, shortly before he entered into the Tax Court decision, Debtor transferred assets to trusts without receiving adequate consideration.

After the Tax Court decision was entered, the IRS assessed the deficiencies in income tax determined in the Tax Court, and it began serving levies on bank accounts to try to collect them.  The United States obtained bank records and other documents that indicate that, with the assistance of friends, family, and business associates, Debtor moved hundreds of thousands of dollars from the accounts of one entity that he controlled to another to prevent the IRS from collecting it.  In short, Debtor appears to have engaged in a shell game, moving money and assets from one entity or trust to another to prevent the United States from collecting his tax liability.

In 2014, the United States filed a collection action in the United States District Court for the Southern District of Ohio (ODC) to try to collect Debtor's income tax and trust fund recovery penalty liabilities.  The United States attached 81 exhibits to its complaint, and most of them are evidence of the shell game.

On March 29, 2017, when the United States was about to obtain a judgment in the ODC for the income tax assessments for 1990 through 1992 and be able to have a receiver appointed to liquidate two real properties that the United States alleged were titled in the names of alter egos, Debtor filed a petition for Chapter 11 relief.  Because of various agreements and decisions entered in the ODC, it was unnecessary for the United States to take any depositions, so it did not obtain testimony to confirm and flesh out the allegations in its complaint regarding Debtor's use of friends, family, entities, and trusts to hide his assets from collection to pay his taxes.

The Rule 2004 examination revealed, among other things, that, in late 2014, after the IRS recorded notices of federal tax against him in the state of his residence (Florida) and after he was served with process in the case filed by the United States in the ODC, Debtor negotiated and executed documents purporting to transfer his 100% stock ownership of West Virginia Healthcare, Inc. (WVHI) to a trust established by his father, Roger L. Scherer.  Debtor, his sister, and Debtor's adult children are beneficiaries of the trust established by his father and additional trusts established by the trustee of his father's trust.  According to documents supplied by Debtor in response to the Rule 2004 request for production of documents served by the United States, WVHI holds assets with a value of over $4 million - - the land and building comprising a combination nursing home and assisted living care facility in Bluefield, West Virginia.  Debtor purported to transfer those shares despite the fact that he had pledged them to a bank as collateral for his guarantee of a loan to WVHI and that the loan agreement states that he is to maintain

majority ownership of the stock.  In addition, the stock certificate is held by the bank.  Debtor did not endorse the certificate.  Debtor did not list the stock in WVHI as an asset on his schedules.

Debtor has a debt to the United States of more than $5.5 million for income taxes and trust fund recovery penalties.  He has a history of failing to insure that his companies pay to the IRS the income and social security taxes withheld from the wages of the employees.  His schedules reveal that he has debts in even larger amounts to financial institutions.  He has established a pattern of disregarding tax, financial, and banking obligations in order to use money owed to others to keep his businesses afloat.  Documents that the United States wants to authenticate and ask Debtor questions about indicate that he has disregarded corporate and trust forms to use their funds to pay his personal expenses and to pay for expenses of other companies. The United States was beginning to develop relevant testimony on these topics at the Rule 2004 examination.  It is in the best interest of the United States and Debtor's other creditors that the United States complete its Rule 2004 examination because it appears that it may reveal assets that, in substance, Debtor owns or in which he has a beneficial interest that he did not disclose in his schedules.  At the very least, the United States is entitled to have Debtor answer the questions.  If Debtor did not engage in a shell game or other activity to hide assets from collection, he should not have a concern about providing additional testimony.

At the examination on November 3, 2017, the United States asked questions on the following topics:

1. Debtor's education and business background.

2. Debtor's knowledge of federal income tax and federal employment tax withholding, filing, and payment obligations.

3. Debtor's family members, trusts of which they are beneficiaries, and businesses in which they work.

4. Debtor's business associates and the roles they perform for Debtor and the entities and trusts in which he has an interest and/or controls.

5. Trusts established by Debtor's father and by himself, their assets, and the relationship between the trusts.

6. Probate Court proceedings concerning Debtor's father' trust.

7. Correspondence between Debtor and his business associates and the trustee of some of the trusts.

8. Checking accounts of various entities of which Debtor has had checksigning authority and some of the specific transactions reflected on bank statements for them.

9. Tax Court litigation.

10. IRS levies.

11. Some of the Businesses that Debtor owns, owned, and/or controlled, including Northern News, Harbor Park Market, Harbor Park Mini Warehouse, National Realty Service, Inc., National Sign & Signal, Inc., Intelligent Perimeter Systems, Inc., Maximum, Inc., The Maples, Inc., and WVHI.

12. The purported transfer of Debtor's 100% stock interest in WVHI.

Although the United States asked Debtor questions about some exhibits with respect to the above 12 subjects, it has many other exhibits it needs to ask Debtor questions about concerning those subjects. Recognizing midstream in the examination that it was unlikely that he could complete the examination on November 3, 2017, counsel for the United States sometimes skipped the use of some exhibits on the topics he covered in an attempt to cover as many topics as possible that day.

Also, the United States needs to cover other topics, including, but not limited to:

1. Scherer Companies.

2. Scherer Properties, Inc.

3.  Scherer Properties, LLC.

4.  Jefferson Bank Shares of Stock.

5.  College Properties Limited Partnership.

6.  1751 Valley Road, Harbor Springs, Michigan 49740.

7.  Credit applications.

8.  Bank statements.

9.  Connolly, Jackson & Collier, LLP .

10. Numerous invoices and transactions reflected on bank statements.

11. Additional questions regarding the Probate Court proceedings and litigation regarding the Roger L. Scherer Trust and the management of Debtor's father's trusts and trusts established for him and his family members.

To be clear, the above information is not an exhaustive list of the topics that the United States requires additional examination to cover.  Also, it cannot predict areas of follow-up questions based on Debtor's answers to questions.  Further, the United States does not want to provide an exhaustive list of additional topics to be covered because it wants to try to preserve the ability to obtain unrehearsed answers during subsequent examination.  The list provided demonstrates a need for an additional full business day of examination.

**CONCLUSION**

The Court should issue an order authorizing the United States to take an additional seven

(7) hour business day of Rule 2004 examination of Debtor.

UNITED STATES OF AMERICA,
Creditor

*/s/ Alan Shapiro*
ALAN SHAPIRO
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C.  20044
Telephone:  (202) 307-5839
Telephone Facsimile: (202) 514-5238
E-Mail: alan.m.shapiro@usdoj.gov

## CERTIFICATE OF SERVICE

**IT IS HEREBY CERTIFIED** that service of the foregoing **CREDITOR UNITED STATES' MOTION FOR ADDITIONAL TIME FOR RULE 2004 EXAMINATION OF DEBTOR** has been made upon the following by depositing a copy in the United States mail, postage prepaid, this 27th day of November, 2017:

Matrix drawn from Debtor's Amended Proof of Service of Order on Debtor's Application to Employ Real Estate Agent Michaela Grandey of Rolls Realty at Docket Item #72-1 in Case No. 2017-2004.

| | | |
|---|---|---|
| Bank of America US Trust<br>150 N College Street<br>NCl-028-29-03<br>Charlotte, NC 28255-0001 | Citizens Bank<br>328 South Saginaw<br>Flint, Michigan 48502-1926 | Duane Morris LLP<br>190 South LaSalle Street<br>Suite 3700<br>Chicago, IL 60603-3433 |
| FIFTH THIRD BANK<br>MD# ROPS05 BANKRUPTCY<br>DEPT<br>1850 EAST PARIS SE<br>GRAND RAPIDS MI 49546-6253 | First Century Bank<br>P.O. Box 1559<br>Bluefield, West Virginia 24701-1559 | Florida Department of Revenue<br>Bankruptcy Unit<br>Post Office Box 6668<br>Tallahassee FL 32314-6668 |
| Lionspaw Grand HOA, Inc.<br>c/o Nelson & Selwitz Property<br>Management<br>1190 Pelican Bay Drive<br>Daytona Beach, FL 32119-1381 | Maples Health Care, Inc.<br>1600 Bland Street<br>Bluefield, WV 24701-3775 | Lionspaw Development LTD<br>133 E. Indiana Avenue<br>DeLand, FL 32724-4341 |
| Nationstar Mortgage<br>8950 Cypress Waters Blvd<br>Coppell, TX 75019-4620 | Northwestern Mutual Life<br>530 W. Spring Street, Suite 200<br>Columbus, OH 43215-5385 | National Sign & Signal Inc.<br>301 Armstrong Road<br>Battle Creek, MI 49037-7374 |
| State of Michigan<br>P.O. Box 30774<br>Lansing, MI 48909-8274 | State of Ohio<br>P.O. Box 530<br>Columbus, OH 43216-0530 | Ocwen Loan Servicing, LLC<br>1661 Worthington Road, Suite 100<br>West Palm Beach, FL 33409-6493 |
| Volusia County Revenue Division<br>123 West Indiana Avenue, Rm 103<br>Deland FL 32720-4615 | Ella Roberts, Esquire<br>Albertelli Law<br>Post Office Box 23028<br>Tampa, FL 33623-2028 | RAM GROUP, INC.<br>c/o Harlan L. Paul, Esquire<br>Paul, Elkind, Branz & Kelton, P.A.<br>142 East New York Avenue<br>DeLand, Florida 32724 |
| The Ohio Department of Taxation<br>Ohio Department of Taxation,<br>Bankruptcy<br>P.O. Box 530<br>Columbus, OH 43216 | Venar Ayar, Esquire<br>Ayar Law Group<br>3000 Town Center, Suite 501<br>Southfield, Michigan 48075 | Department of Treasury, Internal<br>Revenue Service<br>400 W. Bay Street, Stop 5270<br>Jacksonville, Florida 32202 |

| | | |
|---|---|---|
| Jill E. Kelso, Esquire<br>Office of the United States Trustee<br>George C. Young Federal Building<br>400 W. Washington Street<br>Suite 1100<br>Orlando, FL 32801-2440 | Fifth Third Bank<br>38 Fountain Square Plaza<br>Cincinnati, OH 45263 | James H. Monroe, Esquire<br>James H. Monroe, P.A.<br>Post Office Box 540163<br>Orlando, Florida 32854 |
| Suzanne Heffelman<br>Special Assets Division<br>The Huntington National Bank<br>2361 Morse Road NC3W67<br>Columbus, Ohio 43229-5865 | Ronald E. Scherer, Sr.<br>P.O. Box 730478<br>Ormond Beach, Florida 32173-0478 | Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, Pennsylvania 19101-7346 |
| The Huntington National Bank<br>  c/o Dennis J. Morrison, Esquire<br>Two Miranova Place, Suite 220<br>Columbus, Ohio 43215-7050 | State of Michigan, Department of Treasury<br>Cadillac Place<br>3030 W. Grand Blvd., Ste. 10-200<br>Detroit, Michigan 48202-6030 | Lionspaw Development LTD<br>125 E. Indiana Avenue, Suite A-2<br>Deland, Florida 32724-4341 |
| Lionspaw Development LTD<br>  c/o McMahan Irrevocable Living trust<br>133 E. Indiana Avenue<br>Deland, Florida 32724-4329 | Susan D. Cochran<br>State of Michigan – Dept. of Attorney<br>3030 W. Grand Blvd., Suite 10-200<br>Detroit, Michigan 48202-6030 | Internal Revenue Service<br>Centralized Insolvency Operations<br>P.O. Box 7346<br>Philadelphia, Pennsylvania 19101-7346 |
| | | |

      **IT IS HEREBY CERTIFIED** also that service of the foregoing **CREDITOR UNITED STATES' MOTION FOR ADDITIONAL TIME FOR RULE 2004 EXAMINATION OF DEBTOR** has been made upon the following by depositing a copy in the United States mail, postage prepaid, this 27th day of November, 2017:

Samir Dahman, Esquire
Kohrman Jackson Krantz, LLP
10 West Broad Street, Suite 1900
Columbus, Ohio 43215-4291

Mark Belongia, Esquire
Duane Morris LLP
190 South LaSalle Street, Suite 3700
Chicago, Illinois 60603

Venar Ayar, Esquire
Ayar Law Group
3000 Town Center, Suite 501
Southfield, Michigan 48075

Ronald E. Scherer Restatement of Trust, PNC Bank (as successor to National City Bank),
Trustee
  c/o. Susan Bottiggi, Sr. Vice President, PNC Wealth Management
155 E. Broad Street
Columbus, Ohio 43215

Franklin County Treasurer
c/o Stephen Porte Counselor to the Treasurer
373 S. High Street, 17th Floor
Columbus, Ohio 43215-7824

Municipal Tax Investment, LLC
  c/o CT Corporation System
1300 East Ninth Street
Cleveland, Ohio 44114

 

*/s/ Alan Shapiro*
ALAN SHAPIRO
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C.  20044
Telephone:  (202) 307-5839
Telephone Facsimile: (202) 514-5238
E-Mail: alan.m.shapiro@usdoj.gov